JESSE M. CHASE CASPER CO., Inc., a Wyoming corporation, and W. C. Barnett, Jr., Plaintiffs,

v.

Clyde P. FUGATE, as Director of Revenue and as Motor Vehicle Dealer's Administrator of the State of Colorado, and David Walker, as Supervisor of the Motor Vehicle Dealer's Administrator of the State of Colorado, Defendants.

Civ. A. No. 4764.

United States District Court,
D. Colorado.

Jan. 26, 1955.

Max D. Melville, Fred M. Winner, and William G. Berge, Denver, Colo., for plaintiffs.

Duke W. Dunbar, Atty. Gen., and Omer Griffin and Patricia Maloy, Asst. Attys. Gen., for the State of Colorado, for defendants.

Before PHILLIPS, Chief Circuit Judge, KNOUS, Chief District Judge, and BREITENSTEIN, District Judge.

PER CURIAM.

This cause having come on to be heard on November 10 and 12, 1954, by this statutory three-judge court, legally convened pursuant to 62 Stat. 968, 28 U.S.C. §§ 2281, 2284, and the Court having considered the pleadings and heard the evidence and arguments of counsel for all of the parties and upon due consideration thereof it appearing to the Court that the plaintiffs should be granted the relief prayed for in their amended complaint, the Court does hereby make and enter the following findings of fact and conclusions of law.

### Findings of Fact

1. This action is by Jesse M. Chase Casper Co., Inc., a Wyoming corporation, substituted during the trial for the plaintiff Jesse M. Chase, and by W. C. Barnett, Jr., a resident and citizen of Texas, as plaintiffs, against defendants Clyde P. Fugate, as Director of Revenue and as Motor Vehicle Dealer's Administrator, and David Walker, as Supervisor of the Motor Vehicle Dealer's Administrator, of the State of Colorado, to enjoin defendants from enforcing against them the provisions of chapter 16, article 11, §§ 420–437, Colorado Statutes Annotated, 1935, Supplement (now Colorado Revised Statutes, 1953, §§ 13–11–1 through 13–11–18), hereinafter called the Dealer's License Law, and of House Bill No. 71, 1954 Colorado Legislature, (Session Laws, Colorado, 1954, chapter 29, p. 85), hereinafter called the 1954 Titling Law.

2. The Dealer's License Law provides, '35 C.S.A.Supp., c. 16, §§ 421(d), 425, 427, 428; C.R.S.1953, §§ 13–11–2(4), 13–11–7, 13–11–8, 13–11–9, that a used motor vehicle dealer is "any person engaged in the business of selling or exchanging used motor vehicles, or who buys and sells, or exchanges three or more used motor vehicles in any one calendar year"; and provides that every used motor vehicle dealer must secure a dealer's license, and that the fee therefor shall be $25; and that such a dealer must post a corporate surety bond against fraudulent practices in the sale of motor vehicles and violations of the motor vehicle laws.

3. Said Dealer's License Law further provides, '35 C.S.A.Supp., c. 16, § 433(f); C.R.S.1953, § 13–11–14(6) that, "it shall be unlawful and a violation of this article for the holder of any license issued under the terms and provisions hereof: * * * for any licensed motor vehicle dealer or used motor vehicle dealer to engage in the business for which such dealer is licensed without at all times maintaining a principal place of business as required by this article".

4. The Dealer's License Law, '35 C.S.A.Supp., c. 16, § 421(h); C.R.S. 1953 § 13–11–2(8), defines the "principal place of business" which it requires the used motor vehicle dealer to maintain as a "site or location devoted exclusively to the business for which the motor vehicle dealer or used motor vehicle dealer is licensed and businesses incidental thereto, sufficiently designated to admit of definite description with space thereon or contiguous thereto adequate to permit the display of one or more new or new and used motor vehicles, on which there shall be located or erected a permanent enclosed building or structure large enough to accommodate the office or offices of the dealer and to provide a safe place to keep the books and other records of the business of such dealer, at which site or location the principal portion of such dealer's business shall be conducted and the books and records thereof kept and maintained; provided, however, that in no event shall a room or rooms in an hotel, rooming house, or apartment house building or a part of any single or multiple unit dwelling house be considered a 'principal place of business' within the terms and provisions of this article unless the entire ground floor of such hotel, apartment house, or rooming house building or such dwelling house be devoted principally to and occupied for commercial purposes and the office or offices of the dealer be located on the ground floor thereof."

5. The Colorado Auto Auction and the Denver Auto Auction, both being part-

nerships, have been, and now are, engaged in Arapahoe County, Colorado, in the business of selling new and used motor vehicles at auction for a uniform, fixed commission. Each of those auctions deals exclusively with, and auctions motor vehicles for and to, motor vehicle dealers exclusively, and, except for some few motor vehicles repossessed by them for failure of payment of purchase price, have sold no motor vehicles for their own account. The motor vehicles are either driven or brought by transport by dealers to the auctions, where they cross the auction block and are knocked down to the highest bidder. The dealer has the absolute right, until the motor vehicle is so auctioned to the highest bidder, to fix or alter the sales price or withdraw the vehicle from sale, and the auction companies act only as agents for the seller. Each auction receives a commission of $20 from the seller for every motor vehicle it sells at auction, regardless of the value or sales price thereof.

In the period from June 1, 1953, to May 31, 1954, sixty-eight per cent of the motor vehicles auctioned by said companies was brought into Colorado from other states, and fifty-eight per cent of the auctioned vehicles were sold to dealers from states other than Colorado. During the same period, the combined auction-sale price of the motor vehicles sold by said companies was $29,852,137.

6. Plaintiffs, who wholesale motor vehicles throughout the Western states, brought motor vehicles into Colorado from other states during the period June 1, 1953–May 31, 1954, exclusively for sale through said auction companies, and also bought motor vehicles there exclusively for transportation to other states, which vehicles (except for a few incidentally resold by plaintiffs through the other auction than the one from which they had purchased, because of dissatisfaction with their purchase or because of other special circumstances) they transported from Colorado into other states.

From June 1, 1953, to May 31, 1954, plaintiff Jesse M. Chase Casper Co., Inc., in its own name or under one of its established trade names, brought approximately 300 motor vehicles into Colorado from other states and sold them through said auction companies for approximately $653,309, at an average profit of $30 a vehicle, or approximately $9,000, and bought approximately 125 motor vehicles at said auctions for approximately $165,-405, and transported them out of Colorado; and during said period plaintiff Barnett brought into Colorado 180 motor vehicles and sold them for $210,675 through said auctions, at an average profit of $40 a vehicle, or $7,200, and bought 15 motor vehicles at said auctions for $18,220 and transported them out of Colorado, making an average profit of $40 a vehicle, or $600.

7. The maintenance in Colorado of a principal place of business, as defined in the Dealer's License Law [par. 4, supra] and as demanded by defendants, would cost each plaintiff not less than $5,000 a year for a minimum establishment and not less than $12,000 a year for an establishment doing a business of $200,000 a year.

8. Section 13(10), chapter 16, Colorado Statutes Annotated, 1935, Supplement (now Colorado Revised Statutes, 1953, Sec. 13–6–10), provided and provides as to motor vehicle dealers in possession of motor vehicles having Colorado certificates of title:

"Upon the sale or transfer to a dealer, as is herein defined, of a motor vehicle for which a Colorado certificate of title has been issued, formal transfer and delivery of the certificate of title thereto shall be made as in other cases; save and except, however, that so long as the vehicle so sold or transferred remains in the dealer's possession and at his place of business for sale and for no other purpose such dealer shall not be required to procure the issuance of a new certificate of title thereto as is otherwise required in this subdivision."

9. The Colorado statute as to motor vehicle dealers in possession of motor

vehicles for which a certificate of title has been issued under the laws of and in a state other than the State of Colorado, '35 C.S.A.Supp., c. 16, Sec. 13(17), before its amendment in 1954, as hereinafter described, read in material part:

"From and after the effective date of this subdivision, whenever any resident of the state of Colorado shall acquire the ownership of any motor vehicle, by purchase, gift, or otherwise, for which a certificate of title has been issued under the laws of and in a state other than the state of Colorado, the person so acquiring such vehicle shall forthwith upon acquiring the same make application to the director or his authorized agent for a certificate of title as in other cases; provided, however, that if any dealer shall acquire the ownership by any lawful means whatsoever of a motor vehicle the title to which is registered under the laws of and in a state other than the state of Colorado, such dealer shall not be required to procure a Colorado certificate of title therefor so long as such vehicle remains in the dealer's possession and at his place of business for sale and for no other purpose; * * * ."

10. In 1954, the Colorado Legislature, by enacting House Bill No. 71, Session Laws, 1954, chapter 29, hereafter called the 1954 Titling Law, amended said section 13(17), set out in material part above, so as to read:

"Whenever any resident of the state of Colorado or a motor vehicle dealer shall acquire the ownership or possession of any motor vehicle by purchase, gift, consignment or otherwise, for which a certificate of title or other evidence of ownership equivalent thereto has been issued under the laws of and in a state other than the state of Colorado, the person or dealer so acquiring such vehicle shall forthwith upon acquiring the same, make application to the director of revenue or his authorized agent for a certificate of title.

Upon issuance by the director of the certificate of title, in this section required to be procured, he shall dispose of the same as is hereinafter provided."

11. Before the 1954 amendment of the Titling Law, no distinction was made between dealer owned automobiles held for resale theretofore titled in Colorado and those titled in other states. However, Session Laws, 1954, chapter 29, permits a licensed motor vehicle dealer to own for resale, without obtaining titles thereto, automobiles theretofore titled in Colorado; but this law requires the same licensed motor vehicle dealer to obtain a Colorado title on automobiles owned for resale if the automobile bears a foreign title and has not been theretofore titled in Colorado, with the result that a dealer who acquires a foreign titled car cannot transfer it without obtaining a Colorado certificate of title, while a dealer who acquires a Colorado titled car can transfer it, and it can be further transferred from dealer to dealer, without certificate of title in any dealer.

12. The said Colorado Auto Auction and Denver Auto Auction, since the effective date of said 1954 Titling Law, each has held a Colorado used motor vehicle dealer's license under the Dealer's License Law solely for the purpose of securing Colorado certificates of title on all such motor vehicles (hereafter called foreign-titled motor vehicles) as may come into their possession as auctioneers for sale, and which have certificates of title or other evidence of ownership issued under the laws of and in a state other than the State of Colorado. Said auction companies were and are required by the 1954 Titling Law and by defendants to secure in their respective names Colorado certificates of title for all foreign-titled motor vehicles coming into their possession as auctioneer-agents. Each auction company, since the effective date of the 1954 Titling Law, has required and does require, as a condition precedent to auctioning any such foreign-titled motor vehicle, that the dealer plac-

ing such vehicle with it for auction authorize it to secure a Colorado certificate of title therefor in its own name. Such Colorado certificates of title have been and are taken in the respective names of said auction companies, but they claim and have no beneficial or legal interest in the motor vehicle, the complete control thereof as to sales price and right of withdrawal from the auction, and the right to receive the full sales price, less the $20 commission for selling and the titling expense, remaining in the sellers.

13. Each of said auction companies, since the effective date of the 1954 Titling Law, has charged and collected from, and does charge and collect from, the dealers placing a foreign-titled motor vehicle with it for auction the sum of $5 for securing Colorado certificate of title therefor, $2 of which is the cost of the certificate and $3 of which is a service charge for procuring such certificate. This $5 charge made by the auction companies for obtaining Colorado certificates of title for foreign-titled motor vehicles, based on plaintiffs' sales through such auctions from June 1, 1953, to May 31, 1954, would amount to approximately $1,500 on the approximate 300 motor vehicles sold through the auctions by plaintiff Jesse M. Chase Casper Co., Inc., and to $900 on the 180 motor vehicles sold through them by plaintiff Barnett.

14. After the effective date of the 1954 Titling Law, plaintiffs, each having bought and sold three or more motor vehicles in the State of Colorado in the calendar year 1954, were deemed and held by defendants to be motor vehicle dealers under the provisions of the Dealer's License Law, and defendants threatened and continued to threaten to enforce against plaintiffs the provisions of said Dealer's License Law unless they procured Colorado used motor vehicle dealers' licenses and maintained principal places of business in Colorado, as defined and required by such Dealer's License Law; and also to enforce against them the provisions of the 1954 Titling Law unless they, as motor vehicle dealers, forthwith secured Colorado certificates of title on all foreign-titled motor vehicles they brought into Colorado for sale, or removed therefrom after purchase, through said auctions. Thereafter, and solely because of said threats, plaintiffs, with a few unimportant exceptions, brought no foreign-titled motor vehicles into the State of Colorado for sale through said auctions, and bought no motor vehicles through them.

15. The practical and inevitable effect of said auction companies' conforming with the 1954 Titling Law, by insisting upon securing Colorado certificates of title on all foreign-titled motor vehicles sought to be sold through their auctions as a condition precedent to auctioning them, is to force plaintiffs either to forego such auctions or to purchase and pay for the service of purchasing, through the agency of said auctions, Colorado certificates of title for all foreign-titled motor vehicles they would bring into the State of Colorado for auctioning through the Colorado Auto Auction and the Denver Auto Auction.

Conclusions of Law

1. This cause involves the validity of two statutes of the State of Colorado under the Constitution · of the United States, and the amount in controversy as to each plaintiff exceeds the sum of $3,000, exclusive of interest and costs, and this Court therefore had and has jurisdiction to try and determine it.

2. Motor vehicles brought into the State of Colorado from other states exclusively for sale to other dealers at an auction of the type of Colorado Auto Auction and Denver Auto Auction, described in Finding of Fact No. 5, and which, when bought at such auctions, are transported by the purchaser from the State of Colorado to other states, are at all times in interstate commerce when being brought to auction, sold at auction, or transported from auction into other states.

3. Motor vehicles brought into the State of Colorado from other states exclusively to be sold to other dealers at an auction of the type described in Find-

ing of Fact No. 5, and which, when bought at such auction, remained in the State of Colorado, are in interstate commerce when being brought to auction, sold at auction, and bought at auction, until delivered to the purchaser.

4. Motor vehicles bought in the State of Colorado, at an auction of the type described in Finding of Fact No. 5, exclusively to be transported from said state, and which are so transported, are in interstate commerce therein from the time of purchase through the time of departure from the boundaries of said state.

5. The Dealer's License Law, which provides that any person who buys and sells, or exchanges, three or more new or new and used motor vehicles in the State of Colorado in any one calendar year is a used motor vehicle dealer and must comply with said statute, and must maintain within said state a "principal place of business", as defined therein, when applied to plaintiffs and others dealing in motor vehicles in the circumstances stated in Conclusions of Law Nos. 2, 3 or 4, creates a real and substantial burden upon interstate commerce, in violation of Article I, Section 8, of the Constitution of the United States, and to that extent is therefore void.

6. The 1954 Titling Law, which provides that whenever any motor vehicle dealer "shall acquire the ownership or possession of any motor vehicle by purchase, gift, consignment or otherwise, for which a certificate of title or other evidence of ownership equivalent thereto has been issued under the laws of and in a state other than the state of Colorado," he "shall forthwith upon acquiring the same, make application to the director of revenue or his authorized agent for a certificate of title," when construed in conjunction with the Colorado statute, '35 C.S.A.Supp., c. 16, Sec. 13(10); C.R.S.1953 Sec. 13–6–10, set out in Finding of Fact No. 8, making it unnecessary for a motor vehicle dealer to procure a Colorado title in his own name for a motor vehicle in his possession for sale and having a Colorado certificate of title, and when applied to plaintiffs and others dealing in motor vehicles in the circumstances stated in Conclusions of Law Nos. 2, 3 or 4, unreasonably discriminates against motor vehicles originating in states other than the State of Colorado, and discriminates in favor of automobiles originating in Colorado, and the statute places a real and substantial burden upon interstate commerce, all in violation of Article I, Section 8, of the Constitution of the United States, and to that extent is therefore void.

7. The combined effect of the Dealer's License Law and the 1954 Titling Law creates a real, substantial and discriminatory burden upon interstate commerce, in violation of Article I, Section 8, of the Constitution of the United States, and said statutes are therefore void as to plaintiffs and others dealing in motor vehicles in the circumstances stated in Conclusions of Law Nos. 2, 3 or 4.

8. Enforcement by defendants against plaintiffs of the Dealer's License Law and the 1954 Titling Law has caused, and would and will cause, serious and irreparable damage to plaintiffs, and they had and have no plain, adequate and complete remedy at law in the premises.

9. An injunction should be ordered herein permanently enjoining defendants and their successors in office, and all persons acting by or through them, or under their direction and control, from enforcing or attempting to enforce against plaintiffs, while dealing in interstate commerce as defined in Conclusions of Law Nos. 2, 3 or 4, with auctions of the type described in Finding of Fact No. 5, the provisions of the Dealer's License Law and the 1954 Titling Law.

It is therefore Ordered, Adjudged and Decreed that the preliminary injunction ordered and issued herein, and entered in the office of the clerk of this Court, on November 17, 1954, be and the same hereby is made permanent, and that the defendants and their successors in office, and all persons acting by or through them, or under their direction and con-

trol, be permanently enjoined and restrained from enforcing or attempting to enforce against plaintiffs while dealing in motor vehicles in interstate commerce, as such dealing is defined in Conclusions of Law Nos. 2, 3 and 4 with automobile auctions of the type described in Finding of Fact No. 5, the provisions of chapter 16, article 11, Sections 420–437, 1935 Colorado Statutes Annotated, Supplement (now Colorado Revised Statutes, 1953, Sections 13–11–1 through 13–11–18), known as the Dealer's License Law, or the provisions of Session Laws of 1954, chapter 29, known as the 1954 Titling Law.

It is further ordered that the plaintiffs recover of the defendants the costs of this action to be taxed by the clerk of this Court.